# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| MAURICE MAY, | ) | Case No.: 2:10-cv-576-GMN-LRL |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| BRIAN E. WILLIAMS, SR., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Before the Court is Defendants Brian E. Williams, Sr., Howard Skolnik, John Daye, Perry Mikel, James G. Cox, and Jerry Howell's Motion for Summary Judgment (ECF No. 20). Plaintiff Maurice May filed a Response on May 17, 2011 (ECF No. 26) and Defendants filed a Reply on May 25, 2011 (ECF No. 27).

## FACTS AND BACKGROUND

This is an action brought by an inmate in the custody of the Nevada Department of Corrections (NDOC). Plaintiff Maurice May alleges that federal constitutional, state constitutional, and state statutory rights were violated by Defendants related to his health care at Southern Desert Correctional Center (SDCC) in Indian Springs, Nevada.

On June 13, 2008, Defendant Williams was the warden of SDCC, Defendant Skolnik was the Director of the NDOC, Defendant Daye was a Correctional Nurse II at SDCC, Defendant Mikel was a Senior Correctional Officer at SDCC, Defendant Cox was a Deputy Director of the NDOC, Defendant Bannister was the Medical Director of NDOC, Defendant Howell was an Associate Warden at Southern Nevada Correctional Center (SNCC) in Jean, Nevada.

1   Plaintiff alleges that on the night of June 13, 2008 Defendants Mikel, Daye, and

2   John did not adequately respond to him when he pushed the emergency call button in his

3   cell multiple times and kicked his cell door along with his cellmate. (First Amended

4   Complaint (FAC) ¶¶ 2–14, ECF No. 12.)  When Mikel did finally respond to Plaintiff's

5   calls for help, Mikel explained that the infirmary nurse (Daye) said there was nothing that

6   he could do for the Plaintiff except give him some ibuprofen medication and have him

7   come to the infirmary in the morning. (*Id.* at ¶11.)  The delay and inaction allegedly

8   caused Plaintiff to experience pain and suffering during the night.  The next morning,

9   Plaintiff was taken to the infirmary and examined by a prison doctor, Dr. Hanf. (*Id.* at

10   ¶¶15–16.)  Doctor Hanf determined that Plaintiff should be transported to Valley Hospital

11   Medical Center in Las Vegas, Nevada for testing and examination to rule out an

12   appendicitis. (*See* Medical Records, Ex. F., ECF No. 21.)  Plaintiff was diagnosed with a

13   right inguinal hernia and a small bowel obstruction and surgery was performed. (*See* FAC

14   at ¶¶16–17.)

15   Approximately one month later, Plaintiff submitted a prison informal grievance

16   complaining of the prolonged response to his emergency calls on the night of June 13.

17   (*Id.* at ¶19.)  Plaintiff was not granted any relief on this grievance. (*Id.* at ¶26.)  Plaintiff

18   then filed a First Level Grievance on August 21, 2008. (*Id.*; Inmate Issue History, Ex. E,

19   ECF No. 20–4.)  Williams, as the warden of SDCC, did not grant Plaintiff's requested

20   relief but did forward the matter to the Inspector General's Office. (FAC at ¶ 27; Inmate

21   Issue History.)  Plaintiff then submitted a Second Level Grievance to which Cox

22   responded that the allegations have been submitted to the Inspector General for

23   Investigations.  (Inmate Issue History.)

24   Plaintiff brought suit in Nevada state court and Defendants removed the action to

25   this Court (Pet. for Removal, ECF No. 1.)  Count one of Plaintiff's FAC asserts Mikel,

1  Day and John Does[1] violated the Eighth and Fourteenth Amendments to the U.S.

2  Constitution; Article 1, Sections 6 and 8 of the Nevada Constitution; and Nevada state

3  statute N.R.S. 193.018 regarding negligent medical care and N.R.S. 197.200 regarding

4  oppression.  Count two asserts Williams, Skolnik, Cox, Howell and Bannister violated

5  the Eighth and Fourteenth Amendments to the U.S. Constitution; Article 1, Sections 6

6  and 8 of the Nevada Constitution; and Nevada state statute N.R.S. 193.018 regarding

7  negligent medical care and N.R.S. 197.200 regarding oppression by promulgating or

8  permitting a policy, practice or custom of not providing adequate medical care in

9  emergency situations.

## DISCUSSION

**A.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that "there is no genuine dispute as to any material fact and

that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A

principal purpose of summary judgment is "to isolate and dispose of factually

unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.

---

[1]  Defendants ask that any fictitious Defendants be dismissed from the action. As a general rule, the use of "Doe"
pleading is improper, since there is no provision in federal rules permitting use of fictitious defendants. *McMillan v.
Department of Interior*, 907 F.Supp. 322, 328 (D.Nev. 1995).  However, in circumstances "where the identity of the
alleged defendant [] [is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity
through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the
identities, or that the complaint would be dismissed on other grounds." *Id.*  In this case, Plaintiff's complaint alleges
participation in his civil rights violations by John Doe #1 who first responded to his call.  John Doe #1 told Mikel
about Plaintiffs situation and Mikel then responded.  Therefore, the Court will not dismiss John Doe #1 at this time.
Plaintiff also alleges John Does I-IV were responsible for the violations stated in count two.  There is no indication
that discovery would uncover the identity of these Defendants and for the reasons stated herein, Plaintiff cannot
succeed on count two so these John Doe Defendants are dismissed.

1    "When the party moving for summary judgment would bear the burden of proof at trial, it

2    must come forward with evidence which would entitle it to a directed verdict if the

3    evidence went uncontroverted at trial.  In such a case, the moving party has the initial

4    burden of establishing the absence of a genuine issue of fact on each issue material to its

5    case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.

6    2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of

7    proving the claim or defense, the moving party can meet its burden in two ways: (1) by

8    presenting evidence to negate an essential element of the nonmoving party's case; or (2)

9    by demonstrating that the nonmoving party failed to make a showing sufficient to

10   establish an element essential to that party's case on which that party will bear the burden

11   of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet

12   its initial burden, summary judgment must be denied and the court need not consider the

13   nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60

14   (1970).

15         If the moving party satisfies its initial burden, the burden then shifts to the

16   opposing party to establish that a genuine issue of material fact exists. *See Matsushita*

17   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the

18   existence of a factual dispute, the opposing party need not establish a material issue of

19   fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to

20   require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*

21   *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In

22   other words, the nonmoving party cannot avoid summary judgment by relying solely on

23   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d

24   1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

25

1    allegations of the pleadings and set forth specific facts by producing competent evidence

2    that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

3         At summary judgment, a court's function is not to weigh the evidence and

4    determine the truth but to determine whether there is a genuine issue for trial. *See*

5    *Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all

6    justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the

7    nonmoving party is merely colorable or is not significantly probative, summary judgment

8    may be granted. *See id.* at 249–50.

9         Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or

10   declaration that, for specified reasons, it cannot present facts essential to justify its

11   opposition, the court may: (1)defer considering the motion or deny it; (2) allow time to

12   obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

13   order."  To obtain relief under Rule 56(d), the nonmovant must show "(1) that [he or she]

14   ha[s] set forth in affidavit form the specific facts that [he or she] hope[s] to elicit from

15   further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are

16   'essential' to resist the summary judgment motion." *State of Cal. v. Campbell*, 138 F.3d

17   772, 779 (9th Cir.1998).

18   **B.     Personal Participation/Causation**

19        Defendants first argue that summary judgment should be granted in their favor

20   based on the lack of personal participation by the Defendants.  "There are two elements

21   to a section 1983 claim: (1) the conduct complained of must have been under color of

22   state law, and (2) the conduct must have subjected the plaintiff to a deprivation of

23   constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d

24   646, 649 (9th Cir. 1984).  For defendants to be held liable under §1983, the plaintiff must

25   demonstrate that the defendant personally participated in the alleged denial of rights.

1   *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 663 n.7 (1978); *Jones v.*

2   *Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Liability under § 1983 attaches only upon

3   personal participation by a defendant in the constitutional violation. *Taylor v. List*, 880

4   F.2d 1040, 1045 (9th Cir. 1989).  However, a supervisor may be liable for constitutional

5   violations of subordinates if the supervisor participated in, directed, or knew of the

6   violations and failed to act to prevent them. *Id.*

7          Prisoners lack a separate constitutional entitlement to a specific prison grievance

8   procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S.

9   1063 (2004).  The denial of prisoner grievances does not state a substantive constitutional

10  claim. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002).  Holding a prison official

11  personally responsible for damages simply because he is familiar with a prisoner's

12  circumstances through direct communications with the prisoner and through

13  communications with his subordinates is such a broad theory of liability that it is

14  inconsistent with the personal responsibility requirement for assessing damages against

15  public officials in a 42 U.S.C. § 1983 suit. *Crowder v. Lash*, 687 F.2d 996, 1005–1006

16  (7th Cir. 1982).  The denial of prisoner grievances alone is insufficient to establish

17  personal participation under 42 U.S.C. § 1983. *Rider v. Werholtz*, 548 F. Supp. 2d 1188,

18  1201 (D.Kan. 2008).

19         Defendants argue that Howell cannot have been personally involved with the

20  alleged violations because he was not assigned to work at SDCC in Indiana Springs,

21  Nevada on June 13, 2008. (*See*, Ex. A.)  Therefore, it would have been impossible for

22  Howell to be involved in the incident.  The Court agrees.

23         Defendants argue that Williams and Cox were not personally involved in the

24  incident because all they did was respond to his grievances.  Williams was the responder

25  to May's first level grievance and Cox was the responder to May's second level

1   grievance. (*See* Inmate Issue History.)  The fact that Williams and Cox denied the

2   grievances is not enough to establish a constitutional claim.  The Court agrees.

3        Defendants argue that May's claims against Williams, Skolnik, Cox, Howell, and

4   Bannister for promulgating deficient inmate and health care emergency policies,

5   practices, or customs and provided inadequate training to prison staff regarding inmate

6   health care emergencies are insufficient.  Defendants argue that May must show a failure

7   on the part of said Defendants that reflects a "deliberate" or "conscious" choice to follow

8   a course of action from among various alternatives. *Clement v. Gomez*, 298 F.3d 898, 905

9   (9th Cir. 2002) (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197

10  (1989)).  May must show that:

11

12       in light of the duties assigned to specific officers or employees, the need for
         more or different training is obvious, and the inadequacy so likely to result
13       in violations of constitutional rights, that the policy-makers ... can
         reasonably be said to have been deliberately indifferent to the need.

14

15  *City of Canton*, 489 U.S. at 390.  The Court recognizes that the parties have not

16  conducted discovery at the time of this writing.  However, under Rule 56(d) the

17  nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot

18  present facts essential to justify its opposition."  May did not state in his affidavit what

19  specific facts he hopes to elicit from further discovery regarding Defendants health care

20  emergency policies or inadequate training.  Defendants have sufficiently challenged

21  May's ability to satisfy his burden of proof on this claim.  Since May has not put forth

22  evidence that would create a material dispute, the Court finds that summary judgment

23  should be entered in favor of Defendants on May's claim in count two regarding deficient

24  policies, practices, or customs which failed to provide available competent health care

25  providers during emergency situations at all times.

**C.      Eight Amendment Violations**

Defendants next argue that May cannot establish an eighth amendment violation. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A detainee or prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Id.* at 106.  The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'." *Hudson v. McMillian*, 502 U.S. 1, 9 (1992). "The existence of an injury that a reasonable doctor or patient would find important and worth of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that prison has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

1        1.    Defendant Mikel

2        Defendants argue that there is no admissible evidence that Mikel "purposefully"

3    ignored or failed to respond to Plaintiff's alleged pain and possible health care need nor is

4    there any admissible evidence that Mikel "intentionally" denied or delayed May access to

5    health care.  Defendants explain that according to the FAC, Mikel was summoned by

6    other prison officers, responded to the notice, listened to Plaintiff, called a medical

7    provider on staff (Daye) and then followed Day's instructions.  Defendants argue that this

8    does not support an inference that Mikel had any basis for knowing that Daye's

9    assessment was incorrect.

10       Plaintiff argues that Mikel made choices that could be construed as intentionally

11   denying or delaying Plaintiff's access to healthcare.  Plaintiff does not know whether

12   Mikel was told not to bring Plaintiff to the infirmary or whether Mikel simply chose not

13   to.  Plaintiff also questions whether Mikel's choice to call the infirmary rather than take

14   Plaintiff there immediately amounted to deliberate indifference.  Plaintiff argues that at

15   the very least if Mikel had taken Plaintiff to the infirmary he could have received pain

16   medication that night that would have helped alleviate his pain.  Plaintiff's affidavit

17   specifies that he needs discovery to know what was discussed on the phone call.  What

18   was said on the call might reveal why Mikel made the choices he made.  These are

19   important facts that could create a genuine issue for trial.  Therefore summary judgment

20   is denied as to Defendants' arguments that Mikel did not violate the Plaintiff's Eighth

21   Amendment right.

22       2.    Defendant Daye

23       Defendants argue that the allegation against Daye amount to nothing more than

24   medical malpractice.  They argue that mere negligence or mere malpractice, and even

25

1   gross negligence, in diagnosing or treating a medical condition, without more, does not

2   violate the Eighth Amendment.

3          On the night of June 13, 2008, Daye was contacted by Mikel concerning

4   Plaintiff's health complaint.  After speaking to Mikel on the phone Daye determined that

5   Plaintiff's health complaint was not an emergency.  Daye explained that even if Plaintiff

6   had been escorted to the infirmary, he only could have given Plaintiff ibuprofen.

7   Defendants explain that Plaintiff did not request a "man down" call which is the typical

8   procedure when an inmate is truly experiencing an emergency situation.  Defendants

9   further argue that Plaintiff did not submit an emergency grievance  during Daye's shift,

10  pursuant to Nevada Department of Corrections Administrative Regulations 740, so

11  Defendants could not have known to deal with the situation any differently.

12         Defendants argue that a prison health care provider's failure to alleviate a

13  significant risk that he should have perceived but did not actually perceive cannot be

14  condemned as the infliction of punishment.  Defendants argue that Daye had no reason to

15  believe there was an emergency or life threatening situation because Plaintiff did not

16  request a "man down" or file and emergency grievance.  However, the Court finds there

17  could be a material issue after discovery is conducted and the phone records are produced

18  regarding whether or not Daye's actions were instead deliberately indifferent instead of

19  only negligent.  Accordingly, summary judgment is not granted in regards to Defendants'

20  arguments that Daye did not violate the Eighth Amendment.

21  **D.     Qualified Immunity**

22         Qualified immunity shields government officials from civil damages unless their

23  conduct violates "clearly established statutory or constitutional rights of which a

24  reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

25  When determining whether or not a state official is entitled to the protections of qualified

1  immunity, a court must engage in a two-question analysis. *Saucier v. Katz*, 533 U.S. 194,

2  201 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 237, 129

3  S.Ct. 808, 818 (2009)).  Courts should inquire as to whether the facts alleged, viewed in a

4  light most favorable to the party asserting the injury, show that a defendant's conduct

5  violated a constitutional right. *Id.*  Courts should inquire whether or not the alleged

6  constitutional right was clearly established at the time of the incident at issue. *Id.*  While

7  the courts have traditionally engaged in the analysis by determining whether a

8  constitutional right was implicated *prior* to determining whether such was clearly

9  established at the time of the alleged conduct, the Supreme Court held in *Pearson,* 129

10  S.Ct. at 818 that:

11

12  > On reconsidering the procedure required in *Saucier,* we conclude that,
    > while the sequence set forth there is often appropriate, it should no longer
13  > be regarded as mandatory. The judges of the district courts and the courts of
    > appeals should be permitted to exercise their sound discretion in deciding
14  > which of the two prongs of the qualified immunity analysis should be
    > addressed first in light of the circumstances in the particular case at hand.
15

16      In determining whether the constitutional right was clearly established, the inquiry

17  by the court "must be undertaken in light of the specific context of the case, not as a

18  broad general proposition . . . ," *Saucier*, 533 U.S. at 201.  "[T]he right the official is

19  alleged to have violated must have been clearly established in a more particularized, and

20  hence more relevant, sense: The contours of the right must be sufficiently clear that a

21  reasonable official would understand that what he is doing violates that right." *Id.* at 202

22  (internal quotations and citations omitted).  Qualified immunity shields a public official

23  from a suit for damages if, under the plaintiff's version of the facts, a reasonable official

24  in the defendant's position could have believed that his or her conduct was lawful in the

25  light of clearly established law and the information the official possessed at the time the

1   conduct occurred. *Hunter*, 502 U.S. at 227; *Anderson v. Creighton*, 483 U.S. 635, 641

2   (1987); *Harlow*, 457 U.S. at 818; *Schwenk v. Hartford*, 204 F.3d 1187, 1195–96 (9th Cir.

3   2000).

4         Defendants argue, that if the Court determines that Plaintiff's Eighth Amendment

5   rights were violated in the manner alleged then the Court must next determine whether

6   Plaintiff had a clearly established right to personally direct all aspects of his medical care

7   and treatment, including the determination as to the need for specialty consultations and

8   surgical procedures, while in the custody of the NDOC.  However, the general law

9   regarding the medical treatment of prisoners was clearly established at the time of May's

10   injuries. *See Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992).

11   Therefore, Defendants are not entitled to qualified immunity.

12   **E.**     **N.R.S. §§ 193.018 and 197.200**

13         Plaintiff alleges a violation of N.R.S. 193.018, which defines negligence.

14   Defendants construe this claim as a violation of Nevada's medical malpractice statue,

15   N.R.S. 41A.071.  It provides:

16

17        If an action for medical malpractice or dental malpractice is filed in the
     district court, the district court shall dismiss the action, without prejudice, if

18        the action is filed without an affidavit, supporting the allegations contained
     in the action, submitted by a medical expert who practices or has practiced

19        in an area that is substantially similar to the type of practice engaged in at
     the time of the alleged malpractice.

20

21   N.R.S. 41A.071.  Defendants argue that Plaintiff has failed to comply with the affidavit

22   requirement and therefore the Court should dismiss Plaintiff's state law medical

23   malpractice claims against Defendants.

24         Plaintiff argues that he is not alleging medical malpractice.  However, Plaintiff

25   fails to identify what exactly he is alleging in his reference to N.R.S. 193.018.

1   Accordingly, the Court finds that Plaintiff has failed to sufficiently state any claim of

2   negligence under state law.

3         Plaintiff also alleges a violation of N.R.S. 197.200.  This is the state of Nevada's

4   criminal statute prohibiting oppression under color of office.  A private civil action

5   cannot be maintained under this statute. *Collins v. Palczewski*, 841 F. Supp. 333 (D.Nev.

6   1993).  Accordingly, this claim is dismissed.

7   **F.     Mental or Emotional Injury**

8         Although Plaintiff did not specifically request damages related to mental or

9   emotional injury in his FAC, Defendants challenge that he is entitled to such damages.  A

10  prisoner must show more than *de minimis* physical injury in order to recover

11  compensatory damages for mental or emotional injury. 42 U.S.C. § 1997e(e); *Oliver v.*

12  *Keller*, 289 F.3d 623, 630 (9th Cir. 2002).  Defendants argue that Plaintiff cannot show

13  more than a *de minimus* physical injury.  However, Plaintiff did suffer a physical injury,

14  the inguinal hernia and a small bowel obstruction.  While the physical injury may not have

15  been at the hand of the Defendants, the fact that Plaintiff suffered in pain through the

16  night is apparent.  Therefore, the Court will not foreclose damages for mental or

17  emotional injuries, at this time.

18  **G.     Punitive Damages**

19        Punitive damages are only available in 42 U.S.C. § 1983 suit when a plaintiff

20  shows that defendants' conduct was motivated by evil motive or intent of when it

21  involves reckless or callous indifference to the federally protected rights of the plaintiff.

22  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Dubner v. City and County of San Fransisco*, 266

23  F.3d 959, 969 (9th Cir. 2001).

24        Defendants argue that there is no admissible evidence of conduct motivated by

25  evil motive or intent on the part of Defendants nor is there admissible evidence of

1    reckless or callous indifference to Plaintiff's federally protected rights.  However,

2    discovery of the telephone conversation may reveal differently.  Accordingly, Plaintiff's

3    claim for punitive damages is not dismissed, at this time.

4    **H.     Attorney fees**

5        Pro se civil rights litigants are not entitled to attorney fees. 42 U.S.C. § 1988; *Kay*

6    *v. Ehrler*, 499 U.S. 432 (1991); *Gonzalez v. Kangas*, 814 F.2d 1411, 1412 (9th Cir.

7    1987); *Sellers v. Fourth Judicial Dist. Court*, 71 P.3d 495, 498 (Nev. 2003).  Here,

8    Plaintiff is a pro se litigant and thus, Plaintiff is not entitled to attorney fees.  If however,

9    Plaintiff does at some point retain an attorney these fees may be available, therefore they

10    are not dismissed at this time.

**CONCLUSION**

12        IT IS HEREBY ORDERED that Defendants Brian E. Williams, Sr., Howard

13    Skolnik, John Daye, Perry Mikel, James G. Cox, and Jerry Howell's Motion for

14    Summary Judgment (ECF No. 20) is GRANTED in part and DENIED in part.

15        Summary Judgment is GRANTED in favor of Defendants on Count Two of the

16    First Amended Complaint and the Count One claims in violation of N.R.S. 193.018 and

17    N.R.S. 197.200.

19        This case should proceed to discovery on Plaintiffs allegations against Defendants

20    Mikel, Daye and John Doe #1 for violations of Eighth and Fourteenth Amendments to the

21    U.S. Constitution and Article 1, Sections 6 and 8 of the Nevada Constitution.

22        DATED this ___4___ day of April, 2012.

_____

Gloria M. Navarro
United States District Judge